UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

U.S. DISTRICT COURT
DISTRICT OF N.H.
12: 11

Jonathan A. Perfetto
Plaintiff

vs.

Docket No. 1: 14-fp-556
Jury Demand

Dave Dionne, Supt.
Hillsborough County
Dept. of Corr., et al
Defendants

COMPLAINT UNDER THE CIVIL RIGHTS ACT
42 U.S.C. SECTION 1983

I Parties

1. Name  Perfetto        Jonathan        A
         (Last)          (First)        (Initial)

2. Place of Detention <u>New Hampshire State Prison For Men</u>

3. Institutional Address <u>P.O. Box 2828 Concord, NH 03302-2828</u>

4. Are you incarcerated pursuant to a pretrial detention order or are you a sentenced inmate?

<u>X</u> Sentenced Inmate

5. Date pretrial order was issued or sentence imposed

<u>December 19, 2011</u>

B. Please provide the full name, current title, and address known for each defendant

1. Name <u>Doe</u> <u>Jane X2</u> <u>Unknown</u>
   (Last)  (First)  (Initial)

2. Title <u>Mail Clerk</u>

3. Address <u>HCDOC, 445 Willow St. Manchester, NH 03103</u>

1. Name _Ellis_____ _FNU_____ _Unknown_
         (Last)      (First)   (Initial)

2. Title _Field Training Officer_

3. Address _HCDCC, 445 Willow St, Manchester, NH 03103_

1. Name _Crowell_____ _FNU____ _Unknown_
         (Last)    (First)    (Initial)

2. Title _Correctional Officer_

3. Address _HCDC, 445 Willow St., Manchester, NH 03103_

1. Name _Goodyerez (youngerone) FNU Unknown_
         (Last)    (First)    (Initial)

2. Title _Correctional Officer_

3. Address _HCDC, 445 Willow St, Manchester, NH 03103_

E.R.

1. Name ___Boyer_____ ___FNU_____ ___Unknown____
        (Last)        (First)      (Unknown)

2. Title ___Lieutenant___

3. Address __HCDOC, 445 Willow St, Manchester, NH 03103__

1. Name ___Hiscoe_____ ___Gifford_____ ___Unknown____
        (Last)        (First)      (Unknown)

2. Title __Chief of Security/Captain__

3. Address __HCDOC, 445 Willow St, Manchester, NH 03103__

1. Name ___Cusson_____ ___Marc_____ ___Unknown____
        (Last)        (First)      (Initial)

2. Title __Chief of Operation/Captain__

3. Address __HCDOC, 445 Willow St, Manchester, NH 03103__

1. Name ___Ryan_____ ___Denise_____ __Unknown___
   (Last)           ( First )           (Initial)

2. Title _Medical Administrator_

3. Address _HCDOC, 445 Willow St. Manchester NH 03103_

1. Name ___Fuller____ ___Bill_____ ___Unknown___
   (Last)           (First)           (Initial)

2. Title _Medical Supervisor_

3. Address _HCDOC, 445 Willow St Manchester, NH 03103_

1. Name _Turnball____ _Quentin____ ___Unknown____
   (Last)           (First)           (Initial)

2. Title _Psychiatrist_

3. Address _HCDOC, 445 Willow St. Manchester, NH03103_

1. Name Lucas ___ Fwd ___ _____
   (Last)    (First)    (Initial)

2. Title Correctional officer

3. Address HCDoc, 445 Willow St, Manchester, NH 03103

1. Name Paionne ___ Dave ___ Unknown
   (Last)    (First)    (Initial)

2. Title Superintendent

3 Address HCDoc, 445 Willow St., Manchester, NH 03103

II Statement of Claim

For each claim, please include the following information on attached sheets:

1. State which Federal Constitutional or federal statutory rights have been violated.

2. State which defendant(s) have violated that particular right for each allegation.

3 State with specificity, the facts and circumstances that gave rise to the violations or deprivations alleged.

4. State the harm or damage that resulted from the alledged

─6─

Violation or deprivation.

Allegation I  No Tracking of Mail Sent As Indigent

a.  The plaintiffs First and Fourteenth Amendments

to the United States Constitution were violated in this

allegation.

b.  The defendants of this allegation are:

  1. Jane Doe, Mail Clerk

  2. Captain Marc Cusson, chief of Operations

  3. Dave Dionne, Superintendent

c.  On several occasions during the plaintiff Jonathan

__ Andrew Perfetto's incarceration at Hillsborough County

-7-

Department of Corrections from Monday, November 16,

2009 through Sunday, November 14, 2010, he went

without one of his allowed weekly letters he can send

as indigent.[1]

_____

[1]         Hillsborough County Department of
Corrections allows inmates who have less than $2 in their
accounts to mail three letters per week at no cost for postage
to the inmate

d.     The plaintiffs suffered from not having contact with

members of his family, clergy, and other personal and

proffessional contacts that he had during his stay at HCDCC[2]

_____

[2]         The plaintiff even logged mail he sent as
indigent on paper and asked the unit officer if s/he would sign
the log with the name and address of the letters the plaintiff

mailed as indigent and they refused.

Allegation II <u>No Tracking of Legal Mail</u>

a.      The plaintiff's First and Fourteenth Amendment

to the United State's Constitution were violated by this

allegation.

b.      The defendant's of this allegation are:

1. Jane Doe, Mail Clerk x 2

2. Captain Marc Cleson, Chief of Operations

3. Dave Dionne, Superintendent

c.      While the plaintiff was incarcerated at

Hillsborough County Department of Corrections, From Monday,

November 16, 2009 through Sunday, November 14, 2010, he would send legal mail to his former public defender Sarah Rothman, Bennett Martel, of New Hampshire Legal Assistance (his attorney on a civil matter against New Hampshire Health and Human Services, Barbera Steadman Hester, and Barbera Keshen of New Hampshire Civil Liberties Union Foundation about one to two times per month.

C-2    On about November 23, 2009, the defendant Sent a civil suit against New Hampshire Department of Corrections to Hillsborough County Superior Court, North. The

-10-

plaintiff had to write three times (over a five month period) to get a response from the court.

c.3    Sometime in January 2014, the plaintiff asked his unit officer (Mu Goldman (note a defendant) if mail sent to attorney's and courts are logged in or back. He stated he was unsure and asked the second floor Sargeant Mu Dee (also not a defendant). Correctional Officer Mu Goldman later told the plaintiff the the jail doesn't log legal mail or to the courts.

d.    By the defendants failing to come up with a plan to log legal mail sent out at this facility it even 3 inmates from proving legal mail was over sent out.

Allegation III Failure To Send Legal Mail Certified

a.    The plaintiff's First, Sixth, ^Eighth^ and Fourteenth Amendments

to the United States Constitution were violated by this allegation.

b.    The defendant(s) of this allegation were:

1. Jane-Doe Mail Clerk X2

2. Correctional Officer Lucas ^FNU^  or  ⎫
                                          ⎬ 1 defendant
3. Field Training Officer FNU Ellis      ⎭
4. FNU Montminy, Administrator
4. Captain Marc Cusson, Chief of Operations

5. Dave Dionne, Superintendent

c.    On the evening of November 22, 2009, the plaintiff

either Correctional Officer FdLL Lucas or Field Training

Officer F TC Ellis (an African-American Correctional

Officer that works Second shift). if inmates are allowed to send

mail certified to the courts. The plaintiff was told he could not do so.

c2  Sometime during the plaintiff's incarceration, the issue

was grieved Captain Marc Cusson, Chief of Operations replied

[n] "eventhough filed late, mail can be sent certified on a case by

case basis provided s/he has the proper fund in their account[35]

13  The plaintiff wished to file a 42 USC §1983

petition in Superior Court against New Hampshire Department

of Corrections for allowing the plaintiff to be sexually

assaulted, for negligence, as well as emotional distress

4  The petition for the 42 USC §1983 petition was

never acknowledge as received by the Superior Court at their Manchester Address because the plaintiff was not sure if the Court closed down for Asbestos [TM] removal. [5]

[5]       The plaintiff assumed the petition got lost Sometime during the move to the Southern District of Hillsborough County in Nashua, NH.

d.       This allegation deprived the plaintiff of him having

access to postal services, access to the courts, as well as cruel and

unusual punishment due to the fact that being denied certified mail

did not serve the penalogical interests of HCDCC since the

plaintiff had sufficient funds in his account

Allegation IV Pet Request Form Format

a.       The plaintiff's First and Fourteenth Amendments

to the United States Constitution were violated by this

allegation.

b. The defendant's of this allegation are:

1. Captain Marc Cresson, Chief of Operations

2. Dave Dionne, Superintendent

c. During the plaintiffs incarceration at HCDC from

Monday, November 16, 2009 through Sunday, November 14, 2010,

and also January 4, 2011 through December 19, 2011, the

plaintiff filled out approximately 400 Inmate Request Forms

during the first incarceration and about 300 IRF's of which

about half went unanswered or had to be rewritten $

during the first incarceration, and about 300 IRFs of

which about half needed to be rewritten during the plaintiffs

first incarceration and one-third during the latter.

C-2      Some time in February or March 2010, the plaintiff

suggested to Lieutennant Kevin Cunningham (not a defendant) via an

IRF that this form be redesigned to include carbon copies

—an original for the inmate to keep for his/her records

(Essex County Jail in Middleton, MA does this) without a

response to prevent one reds written, a sent to copy, a response copy for

the inmate, and one for his/her file. This was shut down as

uneconomical. The plaintiff grieved this issue in March 2010

and the grievance was denied.

d. By the defendant not having a carbon-copy Inmate Request Form System, an inmate cannot prove a request form was filled out to complete the second step in the grievance process of HCDOC's Grievance Policy.

d-2. Also, most of the time, inmates must fill out multiple IRF's asking for the same thing; which not only wastes the inmate's time, but staff's as well (and waste's paper, cost) because they must read and sign off on all IRF's.

Allegation V Poor Medical Request Form Format

a. The plaintiff's Eighth and Fourteenth

Amendments to the United States Constitution were violated by this allegation.

b.    The defendants in this allegation are:

      1. Denise Ryan, Medical Administrator

      2. Bill Fuller, Medical Director

      3. Dave Dionne, Superintendent

c.    During the plaintiff's incarceration at NHDOC from November 16, 2009 through November 14, 2010 and also January 4, 2011 through December 19, 2011, the plaintiff, on average, filled out between one to three Medical (Sick Call) Request Forms per week.

C.2    The problem with the MRF is there is no space on the

form for a response, so the inmate has to remember to remind

the nurse at sick call two days after turning in a slip to

find out what the disposition of the request was.[6]

[6]         It is the DOC policy that medical staff
can take up to 48 hours (2 business days) to answer a
Medical (Sick Call) Request Form.

d.    By the defendant's not having an adequate sick call

Medical Request form, inmates suffer more than they need to

because most times the requests are not attended to in a

timely fashion as per policy. (i.e. seeing Medical Doctor

Dr. Massewiz, Psychiatrist Dr. Turnball and Dentist

-19-

John Doe.[7]

[7] The average wait time to see Drs, Ford Turnball and Masewic or the Dentist John-Doe is 10-12 weeks There are on average 650 inmates at HCDC.

Allegation VI Denial of facility Prescribing Medication's Prescribed By the Plaintiff's Primary Care Physician, Dr. Kiprop

a. The plaintiff's Eighth and Fourteenth Amendments to the United States Constitution were violated by this allegation.

b. The defendants of this allegation are:

1. Dr. Matthew Masewic, MD

2. Dr. Quentin Turnball, Psychiatrist

3. Denise Ryan, Medical Administrator

4. Bill Fuller, Medical Director

5. Dave Dionne, Superintendent

c.    Before becoming incarcerated at HCDCC on

November 16, 2009 the plaintiff was on numerous

medications for his general health and psychiatric issues

c.2.    It is common practice for HCDOC medical doctor[15]

Dr. Matthew Masewic to not prescribe medication that

inmates were prescribed by their P.C.P. forcing them

to detox off of the particular medications. As an

example, despite numerous MRF's and a grievance

complaining about compulsive masturbation[8]

[8] The plaintiff is a confessed full-fledged sex addict and attended sex aholics anonymous and Sex and Love Addicts Anonymous out in the community on a regular basis. This is why he asked Dr. Matthew Moserwic to prescribe the Depo Provera shots to curb his urges to masturbate and urges to masterhate and urges to molest children once released.

the plaintiff was never prescribed his Depo-Provera shots while incarcerated.

C-3   From November 16, 2009 through November 14, 2010, went twithout his Artstig and Risperadol and went through severe withdrawal symptoms such as suicide ideation, nightmares, little sleep, depressed

mood and high anxiety. The plaintiff lost about 20 pounds

pounds in two months ⁹

9.    The Honorable Court can ask any doctor, psychiatrist, nurse, or pharmacist as to what symptoms patients may suffer by not getting these medications.

G4    When the plaintiff saw the defendant Dr. Mathew

Mossewic on January 11, 2010, he handed him a complaint the

plaintiff filed with the New Hampshire Board of

Medicine. Then the defendant referred his Psychiatric

care to Dr. Quentin Turnbell, the jail psychiatrist for a

consultation on the plaintiff's psychiatric medications [10]

10    When the plaintiff handed the defendant

his copy of the complaint filed against him with the New Hampshire

Board of Medicine after reading it said, "This case is too complicated for me." The plaintiff believes Dr. Mesewic did this for punishment for filing the complaint against him.

C-5     The plaintiff met Dr. Quentin Turnball on January 20 or 27, 2010 and he decreased the plaintiff's prozac due to the plaintiff lacking the ability to focus on tasks and not being able to concentrate. Defendant Dr. Quentin Turnball also placed the plaintiff on a new medication called Remeron. He was started on 20mg to be taken at bedtime to help the plaintiff's depression and sleep disorder.

C-6     On Wednesday, February 24, 2010, defendant Dr. Quentin Turbull increased the plaintiff's Remeron to 40mg

to be taken at bedtime and dis continued the plaintiffs

Prozac at his request due to him being extremely

forgetful [4]

[4]        When a person takes Prozac for a long
period of time, (the plaintiff was on it for 8 years) s/he
can lose the ability to remember thing per defendant Dr.
Quentin Turnball

c-7.        About April 16, 2010, the plaintiff saw defendant Dr.

Quentin Turnball and he told him the plaintiff thought he

was going into a "manic" phase of his bi-polar condition. [12]

[12]        The plaintiff thinks he just got off suicide watch
around that time but is not sure.

Dr. Quentin Turnball wanted to increase the plaintiffs

−25−

Tegretol, but he asked for him to prescribe a blood

level first; because back in 2005, the plaintiff had too

high of a level and got sick. At the time he was on 600

mg at noon and 1000mg at bedtime. The plaintiff's

current dose (in 2010) was 800 mg twice daily.

C-8    About May 12, 2010, the plaintiff saw

defendant Dr. Quentin Turnball and he complained of

not sleeping more than two to three hours per night

for about the past two weeks [13]

[13]     About April 29 2010, the plaintiff
received a printout of possible side effects of
taking Remeron (such as raising the plaintiff's cholesterol
Cholesterol levels on Rousstain, a cholesterol reducing medication]

Suicidal ideation, depressed mood and irritability—all of which the plaintiff suffered from for more than three weeks and notified medical of this on a medical request form—unsure of date—). Defendant Dr. Quentin Turnball discontinued the plaintiff's Remeron, however he prescribed nothing to him to treat his depression or insomnia issues.

Finally, after twenty-three nights of little sleep the plaintiff slept more than six hours a night.

C-9.    Sometime in June 2010, the plaintiff saw defendant Dr. Quentin Turnball for his monthly check-up and complained about being moody and irritable, so he prescribed 1mg of Trilifon to be taken twice daily.

C-10    Sometime in the first half of July 2010, the plaintiff again saw defendant Dr. Quentin Turnball at the Drs. request. The plaintiff told him he felt much better as far as his mood goes but felt hyper so then defendant Dr. Quentin Turnball cut the dose of Trilifon in half to 1 mg tablet to be taken in the morning and scheduled another appointment in two weeks.

C-11    About two weeks later (still July 2010) the plaintiff does not remember the reason why defendant Dr. Quentin Turnball did this but was placed on another medication on top of the Tegretol and Trilifon

called Lamectil. The dosage was as follows: 50mg for two weeks; then 100mg for two weeks; then 200mg ~~then~~ there after.

C-11    About August 6, 2010, the plaintiff was placed on suicide watch due to him banging his head on the back wall in his cell several times daily for the past three days and him writing this on a Medical (sick call) Request Form as well as having depressed mood and suicidal ideation

C-12    About September 8, 2010, the plaintiff saw defendant Dr. Quentin Turnball and he increased the plaintiff's Tegretol to 600mg twice daily from 400mg twice

daily.[14]

_____
14              The plaintiff stopped taking his
medication about the last week of August 2010 because he
was sick and tired of medical either letting his medications
run out or expire and he would have to wait up to four
days to get his missing medications from the pharmacy.

G13        When the plaintiff "maxed out" his one year

sentence on November 14, 2010, he was given a prescription

for his Tegretol and Buspar by defendant Dr. Quentin

Turnball via Nurse Laura Morrison (not a defendant) which

was never filled because on November 15, 2010, the

plaintiff was given samples from his PCP, Dr. Peter

Kiprop of Manchester Community Health Center, 145 Hollis

St. Manchester, NH (cc3) 626-9500 for all

prescriptions that the plaintiff was on before his

incarceration (due to housing no money or insurance yet

[He was on SSI and Medicaid/Medicare before becoming

incarcerated.])

C-14        Then on January 3, 2011, the plaintiff LKA

The Cadallac Motel, 502 Chestnut St. Room 32),

Manchester, NH 03101-1416 called his doctor's office

and left a message with nurse Sara LNU stating he was

out of his medications. She called in all prescriptions to Rite-

-Aid Pharmacy on Elm St in Manchester, NH. However,

the plaintiff never got a chance to pick them up

done to him packing his belongings and cleaning the

plaintiff's room to get his $150 security deposit

back, [15]

[15]     The plaintiff was preparing to flee
New Hampshire as he knew the police were after
him because his laptop got seized at a local pawn shop
on Christmas Eve 2010 and child sex abuse images
AKA child pornography was found on it.

C15.     On January 4, 2011, the plaintiff received a

phone call from Juvinile Detective Thomas Craig at

0800 hours, to discuss the laptop seizure. (He was due

to leave for Boston at 1700 hours. Reluctantly, the

plaintiff agreed to meet with him at 1400 hours.

C-16    At the conclusion of the interview, the plaintiff was placed under arrest for possessing child sex abuse images on his laptop computer and failure to report his online identifiers. He was sentenced to two ten-to-twenty year sentences running consecutive to each other on December 19, 2011

C-17    At the plaintiff's medical screening while at HCDOC on January 6, 2011, he filled out a release form for his medical records and several medical request form asking for his medication and whether or

not if his medications were in. He also

eventually filed a grievance in a timely manner,

when the MRI's got re satisfactory results

GB. At the time of the plaintiff's arrest on

January 4, 2011, he was on the following medications

to treat his bi-polar disorder, depression, anxiety,

borderline personality disorder and paranoia illnesses,

1. Tegretol 400mg in the morning

and 600mg in the evening. This medication was

used to treat the plaintiff's bi-polar disorder

2. Risperadol 4mg at bedtime. This

-34-

Medication was used to reduce the plaintiff's paranoia and sex drive.

3. Elavil 100mg at bedtime. This medication was used to help the plaintiff have a good night's sleep.

4. Buspar 30mg twice daily. This medication was used to reduce the plaintiff's anxiety.

5. Prozac 80mg in the morning. This medication was used to treat the plaintiff's depression.

C-19.    The plaintiff saw defendant Dr. Quentin Turnball in February 2011 and was only prescribed

his Tegretol and Buspar[16]

¹⁶.

Sometime in February 2011, the plaintiff was written up for hoarding his Buspar. What happened was he had a herpes outbreak & that got infected, resulting in a fat lip. The end result was the plaintiff lost his Buspar.

The plaintiff appealed the hearing officer's decision to the Superintendent and lost. Disciplinary Decision's are not grievable per HDOC policy.

C-20.    The plaintiff was on the following general health medications before becoming incarcerated at Hillsborough County Department of Corrections on January 4, 2011:

1. Naproxen 600mg p.r.n. for

Knee pain due to him being obese. He also used this medications for hip pain from surgery as a teenager. The new ailment started after this medication was prescribed for its original purpose

2. Hytrin 10mg to be taken at bedtime. This medication prescribed because in March 2008, the plaintiff was diagnosed with a swollen prostate.

3. Synthroid 125 mcg to be taken in the morning. This medication was prescribed because the plaintiff was diagnosed with hypothyroidism

in January 2000 at New Hampshire Hospital.

4. Provastatin 20mg to be taken at bedtime. This medication was prescribed because the plaintiff was diagnosed with high cholesterol in July 2009.

5. Zantac 150mg to be taken in the morning and at bedtime. This prescribed because the plaintiff was diagnosed with acid reflux disease in 2006 while incarcerated at New Hampshire State Prison.

6. Depo Provera /ml bottle to be

injected every two weeks. This plaintiff was prescribed this medication to reduce his sex drive. The plaintiff compulsively masturbates and has urges to molest children. He started this medication in August 2009 and detoxed when he became incarcerated from November 16, 2009 through November 14, 2010. The plaintiff started it again when released. He had three doses by the time the plaintiff got arrested again on January 4, 2011.

The plaintiff was not put on all of his medications at the time of his incarceration for above

General health issues until seen by defendant

Dr. Matthew Masewic, M.D, in February 2011. [17-18]

[17] It is common practice for Hillsborough County Department of Corrections Medical Doctor to not prescribe medications that inmates were prescribed by their Primary Care Provider

The plaintiff was never prescribed his Depo Provera shot while incarcerated and is a full-fledged sex addict. [18]

[18] The plaintiff even fill/about several Medical Request Forms and he did file a grievance. The result of the grievance was if the plaintiff has more Medical information to provide, give it to medical staff so they can get his medical records to verify the medications the plaintiff is on. This was already done. It is against HCDOC Policy to appeal a grievance decision; once a decision is rendered. It is set in stone so to speak.

Point being, the plaintiff could not grieve defendant D. Matthew Masewic denying giving him his

Depo Provera shots two-to-four months before
maxing out his one year sentence, as it takes that
long to take effect.[19]

---

[19]      The plaintiff even brought
all medication bottles from Rite-Aide with him
when he became incarcerated on November 16 2009.
Nurse Laura Morrison (not a defendant) told him the
jail would not use the pills as they have no way of
knowing if the pills in the bottle are what the bottle
states it is. However, medical staff could have
called Rite-Aide to verify the plaintiff receives these
medications without waiting to receive his medical records.

d.      The plaintiff going without his medications

for several weeks at the onset of each of his two

incarcerations caused severe stress, anxiety, depression,

suicidal ideation, as well as him getting sores on his penis

From the plaintiff frequently masturbating, which the Depo Provera helped with as did the four mg of Risperadol.

Allegation <u>VII</u> <u>Denial of Incoming Religious Material</u>

a.	The plaintiff Jonathan Andrew Perfetto's First, Eigth, and Fourteenth Amendments to the United States Constitution were violated by this allegation.

b.	The defendant's of this allegation are:

1. Jane Doe, Mail Clerk X 2

2. Captain Marc Cusson, Chief of Operations

3. Dave Dionne, Superintendent

c. In January 2010, the plaintiff received a yellow "contraband slip" stating that a bible and a book were rejected by the mail clerk because the package came by Federal Express. The bible was a King James Version and the book was 3 books-in-one titled "Book of Mormon", "Pearl of Great Price", and "Doctrine and Covenants".

c2. In February 2010, the plaintiff received a yellow "contraband" slip stating three volumes of Poems of Rebekah were denied. The Jail claimed that Gospel Messenger Service was not a bona fide

publisher. This was sent from Gospel Messenger Service and they did mail the plaintiff a letter stating they published their own material. Gospel Messenger Service is in Lancaster, NH.

C-3. The plaintiff wrote an IRF to Captain Cusson, Chief of Operations stating he had a letter from Gospel Messenger Service proving they followed HCOC Policy and was still denied. He then filed a grievance.

C-4. In March 2010, the plaintiff again received a yellow "contraband" slip stating pamphlets from Gospel Messenger Service were denied due to.

-44-

multiple copies of the same pamphlet and
intended for distribution which is <u>not</u> allowed.

c5.    The mail policy of the Hillsborough
County Department of Corrections states:

"... Any inmate correspondence
including newspaper, magazines and books must
be received from a publisher or bookstore via
the United States Postal Service. Any correspondence
received from a private courier or private mail agency
(like Federal Express) will not be accepted."

(located on p.7 para. 2, of the HCDC 2005 edition of the

inmate handbook)

d.   Not only was the plaintiff's Constitutional right to practice his religion violated by the mailroom refusing the above items, it constituted cruel and unusual punishment because the plaintiff knows Federal Express takes pride in the way they search their packages for possible contraband with or the X-Ray technology that is available in this day and age, HRDOC doesn't have a prurient interest in isolating postal services, One is not better than the other. They are <u>all</u> <u>the same</u>.

- 46 -

Allegation VIII Medical Department Letting.
The Plaintiffs Medications Renat

a. The plaintiff Jonathan Andrew Perfette's

Eighth and Fourteenth Amendments to the United

States Constitution were violated by this allegation.

b. The defendants of this allegation are:

1. Denise Ryan, Medical Administrator

2. Bill Fuller, Medical Director

3. Dave Dionne, Superintendent

c. On November 16, 2009, the plaintiff was

sentenced to one year at HCDCC for false report

— to a Corrections Officer. On several occasions Denise

Ryan, Medical Administrator allowed the plaintiff's medications to run out ~~or expire~~. He filed a grievance after each occasion.

c2. Also, while the plaintiff was incarcerated at HCDoC until November 14, 2010, the defendant Denise Ryan allowed his medications to expire about two to three times.

d. The plaintiff went through withdrawal symptoms on his medications and had to rewait two to ~~for~~ three weeks before his level got normal again on his psychiatric medications.

Allegation IX Safety Violations

a. The plaintiff, Jonathan Andrew Perfetto's
as well as Title 42 USC 15601-
Eighth and Fourteenth Amendments to the United
15609
States Constitution were violated by this allegation.

b. The defendants of this allegation are :

1. % FNU Crowell

2. % FNU Goodyerez (younger one)

3. % FNU Price

4. Lt. FNU Bayer

5. Captr Gifford Hiscoe, Chief of Security

6. Dave Dionne, Superintendent.

7. Bill Fuller, Medical Director

8. C/o Garilding

c. In Mid-June 2010, defendant C/o FMU Crowell allowed two classification inmates[28]

[28] Protective Custody Inmates shared pod with classification, special status, Suicide watch, awaiting hearing and sometimes pc max inmates

to not lock in their cells, by not doing a round before letting protective custody inmates for 8 p.m. med pass. They were hanging out in the work-out area on the top tier while the plaintiff and other pc's were waiting in line for their medication.

The plaintiff looked around and looked up and they

waived and laughed. The defendant must have

heard them laughing and said to them, "What

the ~~?~~?" Lockdown now, and popped their

doors open and shook his head in disbelief.

c-1        The plaintiff had filed a grievance and
defendant
never got a response. He did, however, speak to

Captain Gifford Hiscoe, Chief of Security about

the incident and since the plaintiff was not

injured no action was going to be taken.

c-2        About May 8, 2010, the plaintiff

−51−

received a letter from then Superintendent James
Jr,
O'Mara (now retired) stating that since more than
thirty grievances were filed by him in a six month
period, the plaintiff can only ask for a grievance
for medical or safety issues only (see p. 18 of
HCDC Inmate Handbook 2005 Edition.)

c-3    The plaintiff believes this is why his

grievance was not answered or returned to him,

(ie: no physical harm was done to the plaintiff

by the two inmates that did not lock in — so no

safety issue, in the Captains or Superintendents'

eyes. The plaintiff disagrees.

C-4  Then sometime in July 2010 Defendant Correctional Officer Goodyerez (younger one) allowed a classification inmate in cell 2034 out for dinner with the plaintiff and other protective custody inmates, A grievance was requested via IRF but it was denied due to Allegation IX para C-2.

C-5  Also, in July 2010, Defendant Correctional Officer FNU Price allowed the same inmate in 2034 out of his cell for 8 A.M. med pass at the same time as the plaintiff and other protective custody inmates.

-53-

The plaintiff told the defendant of his ~~mis~~

mistake and ordered the inmate to return to his

cell. The plaintiff was called a snitch and

threatened to have piss thrown on him by ~~class~~

classification inmate John Doe. The inmate

received a 24 hour lockup.[21]

[21]  The plaintiff, at the time
lived in cell 2038 lower bunk and is unaware
if the inmate in question was written up. A
unit officer or other Correctional Officer assisting
him/her can give a "D" ticket sanction without
being written up.

c.6       Then in August 2010, defendant

__ Correctional Officer FNU Sappyienzza allowed a

Classification inmate to be out of his cell while protective custody inmates and the plaintiff were conducting 8 AM med pass. When he did a round, the defendant noticed an inmate who lived in cell 2045 was using the phone. The inmate was ordered to lockin and was complied to immediately. [22]

---

[22] Cell 2045 was still open so defendant FNU Sappyenzza could have prevented this by checking his control panel switches as well as doing around before letting the plaintiff and other protective custody inmates out of their cells for 8 AM med pass.

C-7    Starting on September 7, 2010, the plaintiff was getting harrassed and assaulted with a wet towel on his bare back and sides by his cellmate Paul Dimmick. The plaintiff repeatedly told him to knock it off

C-8    Later that night, the plaintiff woke up to Paul masturbating. He got up and said, "Do you mind?" and took a leak. The defendant then jumped off his bunk as the plaintiff was washing his hands. Then Paul said to the plaintiff, "I shot my load in my cup and you're

going to drink it." The plaintiff retorted

"You're fxxx'g crazy, no fxxx'g way" Paul

then slapped the defendant with a backhand

so he would not leave any marks. The plaintiff

got a bloody nose. Then the female officer did

a round and asked the plaintiff if he was

okay and how he got the nose bleed. The

plaintiff got scared and told the female officer

that he is prone to bloody noses (which is true-

it in his medical file)

c-9.   As soon as she left, Paul grabbed the

cup, filled it with Kool-Aid ™ and past it to
the plaintiff and said, "Drink up, if you know
what's good for you." Reluctantly the plaintiff drank
the Kool-Aid ™

C-6        On the evening of September 8, 2010,
Paul and the plaintiff were playing
poker for canteen (I agreed to give him
two desserts as I was indigent). When
Paul told his cellmate he was horny and
wanted a blowjob. The plaintiff looked into his
eyes and Paul said, "I won't take no for an answer"

The plaintiff assumes he saw his hesitance.
So the plaintiff complied out of fear of
getting assaulted again. He promised himself
the victim would write an IRF asking to be
removed from this cell the next day. Paul
demanded that the plaintiff let him ejaculate
in his mouth.

C-11    On September 9, 2010, Paul Dimmick
woke the plaintiff up by throwing a roll of
toilet paper at his scrotum. The plaintiff was
in his boxers and t-shirt as it was hot. So the

plaintiff
discreetly filled out an IRF later that evening

when Paul took a nap saying, "I'm being physically

and sexually assaulted by my cellmate Paul Dimmick.

Could he please be moved." He turned in the IRF

defendant
to his unit officer, Correctional Officer FNU ~~Cowell~~

Cowell[23]

---

[23]                The plaintiff is not sure if
Correctional Officer Cowell was the Unit Officer
or relieving the unit officer on Break.

during 8 p.m. med pass. He did not read it, it was
set aside to read later. Nothing was done that
night.

C-12    Then on September 10, 2010 at about 0800 hours, the plaintiff's cellmate started roughhousing with him again by assaulting the plaintiff with a wet towel (he was topless due to the heat) and making a rat tail with it and giving him "purple nupples" culminating to them to playing punch for punch against the plaintiff's wishes. Eventually, the plaintiff fought back to defend himself and let all his pent-up anger reach the surface and fought back to the best of his ability. Defendant FNU Goulding was the unit officer that

day.

C-13    When the plaintiff threw his first

return punch, his right fist connected with the

plaintiff's cellmate's right upper arm and

turned inward, The plaintiff screamed so hard

and thought he had broken his wrist, and yelled

"you son-of-a- bxxxxx." Defendant FNU

Gridding did nothing

C-14    At 12 p.m. med pass the plaintiff

reported his wrist injury while getting his

ibruprofen to Nurse Lynda LNU on first shift (not

a defendant).

a defendant), Since the ~~defendant~~ plaintiff did not

want to get into trouble, he lied about how the

injury happened by stating the plaintiff fell off his

bunk and tried to break his fall to prevent facial

injury.

C-15          Then about 1420 hours on the same

date, Field Training Officer (now Sgt. I not a

defendant]), was doing a round and the plaintiff

told him that if his cellmate returned to this cell

(~~He~~ Paul was in the attorney room coming back from

the gym) he was going to get stabbed with a

-63-

pencil. Ofcourse the plaintiff was transferred to RHU and centtency for threatening his cellmate and a "Keep seperate" was in place by classification until he maxedout on November 14, 2010

C-16    While awaiting hearing, the plaintiff wrote a letter to Paul Dimmick's "baby mama" explaining that he made the plaintiff drink his sperm and that if she did not believe the plaintiff—he knew it tasted like Starburst™ Candy (he might have said it tasted froity.)

C-17    Point being, 3 he and her mons came to the jail and spoke to Captain Hisroe, Chief of Security saying they do not want the plaintiff writing again or they will press charges.

C-18    The plaintiff wrote her to get even" with Dimmick because he offered to help her win foll custody of their child. The plaintiff did not know the mother was a minor.

C-19    On March 20, 2011, between 0700 and 0800 hours (the plaintiff could not see the clock from his cell) and first shift was on but

before 8AM med pass) the plaintiff was called

with inmate Walter Alexsis. The plaintiff was sleeping

and had a towel covering his eyes towards the back of

his head because Walter wanted the bright

light on to write a letter and the plaintiff wanted

to sleep

C-20      After some time, the plaintiff woke up

to Walter masturbating him and he ejaculated

immediately as he was having a sexual dream. When

the plaintiff realized what Walter was doing,

he told him to not do that ever again.

C-21    Then on March 24, 2011, at about 1155

hours (the plaintiff and Walter Alexis just

locked in from conducting out of cell time on unit

2B as a protective custody maximum security

inmate.) within a minute or two of that time the

plaintiff and his cellmate started arguing. Walter

was sitting at the desk facing the plaintiff who

was on his side in bed facing his cellmate. After

a few minutes of arguing, Walter Alexis shoved

the plaintiff's head into the wall causing it to swell

at his left temple area. It took two to three

—67

weeks to heal

C-22     Then about March 22, 2014, the

plaintiff filled out an IRF asking for a

grievance form and was given one by Sgt.

Gordon. It was investigated by defendant Captain

Gifford Hiscoe and the plaintiff never got a

final disposition,

C-23      Then about March 23, 2014, wrote

an IRF for a grievance form and did not

receive it. This was done because the plaintiff

felt he should not been housed with a physically

and sexually aggressive inmate. Again, the
plaintiff never received one. So on April 4 or
3, 2011, he wrote another IRF requesting a
grievance form and defendant Lt. Gail
Boyer spoke with the plaintiff that afternoon
and explained if the plaintiff does not tell staff
of a problem with any inmate (the plaintiff
did not know inmate Walter Alexis or his reputation
at the time they became cellmates about March 16,
2011) then the plaintiff can be celled with any
protective custody inmate so his request for a

grievance ~~was form~~ frivilous and was asked to write an IRF to withdraw the grievance request to which the plaintiff complied out of fear for being written up which could hinder his chances of getting out of maximum security.

d. There are numerous safety violations that the defendants committed—some 80 blatant (the two PREA violations) that staff need to be retrained on how to handle multiple classification units or do not have them. As far as the physical and sexual abuse by inmates

goes, staff need to be retrained on how to handle sexual assaults

Allegation X Improper Mail Procedures

a. The plaintiff's First and Fourteenth Amendments to the U.S. Constitution were violated by this allegation.

b. The defendants of this allegation are:

A. Capt. Marc Cusson, Chief of Operations

B. Dave Dionne, Superintendent

c-1. The plaintiff was incarcerated at HCDOC from November 16, 2009 through

November 1st, 2010 and again from January 4 through December 19, 2011. From time to time he received "yellow" contraband" slips for reasons varing from multiple copies (religious material) to letters written in pencil to a package being shipped by Federal Express.

GZ     The Constitution guarentees inmates to practice their religion, And the Bible requires people to preach the "good news of God's Kingdom. Sometimes this involves

giving out tracts, Bibles, or pamphlets.

Doing this is against HCDOC policy

because all incoming property has the inmates

name and ID number on the inside cover

for security purposes. Acts 5:29 states,

"Then Peter and the other Apostles said,

'We ought to obey God rather than men.'"

(KJV) Also, Mathew 28:19,20 states, "Go

ye therefore and teach all nations, baptizing

them in the name of the Father, and of the Son, and

of the Holy Ghost. 20 Teaching them all things

-73-

whatsoever I have commanded you: and lo,
I am with you always, even unto the end of
the world. A'Men" (KJV) Finally, I Corinthians
[1:17 states, "For Christ sent me [Paul] not to
baptize but to preach with wisdom of words
[or speech] lest the Cross of Christ
should be made of none effect (KJV 100th
Anniversary Editor)

☞          The plaintiff suffered from loss
of contact with his mom, denial of reading a Bible
(it was shipped by Federal Express) for two months

and not allowed to preach the Gospel, which

affected his relationship with Jehovah God.

Allegation XI Loss of Freedom

a.     The plaintiffs Fifth, Eighth, and

Fourteenth Amendments to the U.S. Constitution

were violated by this allegation.

b.     The defendants of this allegation are:

    A. Denise Ryan, Medical Administrator

    B. Bill Fuller, Medical Director

    C. Dave Donne Superintendent

C. When the plaintiff, Jonathan Andrew Perfetto, was found guilty of false report to a Corrections Officer and sentenced to one year at HCDOC on November 16, 2009, he was prescribed 1ml shot of Depo Provera every two weeks since July 2009 to curb his frequent masturbation and his urges to molest children, which he did have before being prescribed the medication.

C.2 When the plaintiff saw defendant Dr. Matthew Masseur on January 11, 2010,

he told him about being on the controversial

drug and explained he currently had problems

with compulsive masturbation and fantasized

about undresting children when masturbating

and he refused to prescribe the Depo Provera.

63       When the plaintiff maked out

his one year sentence on November 1st,

2010 the next day he got an emergency appointment

to see his Primary Care Physician Dr. Peter

Kipropat Manchester Community Health

Center, 145 Hollis St, Manchester, NH 03101

(603)626-9500 and was seen to start the

Depo Provera shots again.

About December 3, 2010, the plaintiff

lapsed [24]

[24]        Sex Offender Treatment
Providers define a lapse as an event that
can lead to reoffending.

and bought a laptop from NH Pawn on

Elm St in Manchester for $200 and a leather canyon

bag for $20. [25]

[25]        The plaintiff says he lapsed
because in 2007 he was convicted for
possessing child pornography on his laptop
Computer. However, he did not plan to reoffend

due to the fact he had a Fourteen to Twenty-
Eight year suspended sentence with conditions
of no contact with minors and no access to
the internet.

c-4            The plaintiff further lapsed when a

neighbor offered to allow him to use his WIFI

connection for $10 per month on about December 8,

2010,

c-5        The plaintiff relapsed by downloading

child sex abuse images (the new term for

child pornography) two days later. He was

arrested on January 4, 2011 and held on

$100,000 cash bail. On December 19, 2011

the plaintiff was sentenced to Twenty to Forty

with Three-and-a-half to Seven years suspended

for five years once released.

C-6        The plaintiff lost control of his sexual

impulsivity[26]

26        Eventhough the plaintiff was
getting his DepoProvera shots, it takes twelve to
Sixteen weeks to get the proper medicated
effect

by not getting his medication (Risperadol &

DepoProvera) during his 2009-10 incarceation

which led him to commit his current

offense. Now he has lost his freedom to live

a productive member of society for a
minimum of Twenty years (served Thirty-
four months so far) and also lost his
ability to earn a living.

d.       As a result of this sentence, it is
likely the plaintiff will be institutionalized and
not want to be released into society when he is
eligible for parole on January 5, 2030.

Allegation XII Destroying Legal Discovery

a.       The plaintiffs Sixth, Eighth and Fourteenth
a.
Amendments to the U.S. Constitution were violated by   .

this allegation.

b.     The defendants of this allegation are:

A. Lt. FNU Robbins

B. Capt. Marc Cresson, Chief of

Operations

C. Dave Dionne, Superintendent

c.     While incarcerated at HrDoc from

January 4, 2011 through December 9, 2011 the

prose plaintiff, Jonathan Andrew Perfetto,

prepared his 42 USC §1983 in his cell and typed it

in the law library over a six month period[26]

26            I took the plaintiff so long
due to the fact he had a bible study during one
of his scheduled days each week with Jehovah's
Witnesses. Inmates at HCDCC are scheduled law
library at the minimum required by the U.S.
Supreme Court - 2 days a week for two hour
sessions.

C-1        Sometime in September or October 2011, the
plaintiff made copies of his lawsuit at a cost of
$1.50 (thirty pages times twenty-five cents) plus
he was forced to use the US Postal Service to
serve the defendants instead of using in-house
mail, Ryer, Captain Marc Cusson and Lt. FNU
Robbins. The bill was $36.32. The plaintiff

-93-

has his receipt.[27]

[27]       The plaintiffs intentions were to file this suit in Hillsborough County Superior Court, Northern District instead of federal court.

C-2       The plaintiff made the error of serving

the lawsuit to Each defendant without a formal

summons from the Hillsborough County Sheriff's

Department, violating the local Court Rules of

the Superior Court.

C-3       The plaintiff wrote a letter to Dave Dionne

about December 15, 2011 asking for the copies to

be returned to him at the prison as he was

-84-

he was being sentenced on the 19th and gave

him his IDs as prison IDs do not charge

c-4      When the plaintiff did not get a response. So

Some time in January 2012, the plaintiff wrote to

Dave.Dionne again, This time he responded that

all copies were destroyed [28]

[28]                  The plaintiff still possesses
this letter.

d.      By the defendant's requiring to have the

plaintiff utilize the United States Postal Service

instead of In-House Mail caused an unnecessary

_ expendature to him. The same goes for Supt, Dionne

by ordering all copies Of the plaintiff's suit destroyed.

d-1      By the defendant's doing above, the plaintiff had to retype his lawsuit causing a delay in the plaintiff's constitutional right to access the Courts.[29]

[29]      When the plaintiff moved to the Mental Health block on April 29 2011 at Northern NH Correctional Facility in Berlin, NH, the law library's only typewriter broke in June, and was in SHU when he originally filed this suit in October 2012. Now the plaintiff currently only gets one hour of law library a week due to being in mental health groups in the prison's Residential Treatment Unit.

Allegation XIII  Medical Administrator Not Doing

<u>Her Job Correctly</u>

a. The plaintiff's Eighth and Fourteenth Amendment's to the U.S. Constitution were violated by this allegation.

b. The defendant's of this allegation are:

    A. Denise Ryan, Medical Director

    B. Bill Fuller, Medical Director

    C. Dave Dionne, Superintendent

c. On numerous occasions during the prose plaintiff, Jonathan Andrew Lестетто's incarceration at HCDC from November 16 2009 through November 14

2010 and again from January 4, 2011 through December 19, 2011, defendant Denise Ryan allowed his medications to run out or expire.

c-1    Upon entry at HCDOC during the plaintiff's both incarcerations, he had to detox off of his medications, which any patient/ inmate should not do as some medications have serious side effects when a person stops taking his medication.

d.    By the defendant's committing this allegation, the patients' medication level

frequently dropped and took longer to get the

full benefit his medication. By him being forced to
                                              mostof
detox off this medication, he got little sleep was

irritable, and was not well behaved

Allegation XIV  Correction's Officials Releasing

A Suicidal Inmate

a.     The plaintiff's Eighth and Fourteenth

Amendments to the U.S. Constitution were

violated by this allegation.

b.    The defendants of this allegation are:

        A. Field Training Officer FNU Mackey (sp?)

-89-

B. Sgt. John/Jane Doe (FTC

Markey's Supervisor

C. Christine Melnick

D. Captain Gifford Hiscoe, Chief

of Security

E. Denise Ryan, Medical/Administrator

F. Nurse Laura LNU

G. Bill Fuller, Medical Director

H. Dave Dionne, Superintendent

c.   When the prose plaintiff, Jonathan Andrew

Perietto, maxed out his one year sentence for false

report to a Corrections Officer on November 14, 2010, he was on suicide watch wearing a safety smock and housed in the Restrictive Housing Unit Awaiting Hearing for insubordination to Yo Leify (not a defendant).

c-1     At no time while being processed out by defendants FTO Mackey and Nurse Laura LMT (she gave me a prescription for the medication Dr. Turnball had me on at the time) did he get a referral to Emergency Services at Manchester Mental Health nor was the local police department notified. The

-91-

Plaintiff at the time, was not aware that

Greater Manchester Mental Health had a 24 hour

Emergency Hotline 30 29

29

Sunday                    The plaintiff was released on a

so he called his mom. 30

30          If she was not home, the plaintiff
was going to end his life by jumping over the
Granite St. Bridge and plunge into the strong
current of the Merrimack River. The plaintiff
is not a good swimmer and knows of Rocky areas
to land where he would get injured

and she answered the phone and he told her the

plaintiff was upset and need to talks he came

-92-

came over (and she had him spend a few days
until he could find a place to live.

G2      The plaintiff's mother was not aware
of Emergency Services either so the plaintiff
made an emergency appointment with his
primary care physician and was seen the next
day (Friday [the plaintiff was released on a
Sunday]) and given all of his medications and re
referred to Emergency Services in case
something happened in the future.
G3      By the plaintiff not being referred to

emergency services through Greater

Manchester Mental Health, he did not get

immediate mental attention. This put the

community in danger because back in 1993,

and 1995, the plaintiff has been homocidal

when not treated by mental health in ~~Hanto~~

Manchester

31          In the past, Greater Manchester
Mental Health has refused the plaintiff treatment.

dt      Point being, if the plaintiff's mother was

not home, the plaintiff could have brought a

a BB gun at Wal-Mart and used it to hold

people hostage as an attention getting.

Allegation XV Assault By A Staff
Member

a. The plaintiffs Eighth and Fourteenth

Amendments to the US Constitution were

violated by this allegation.

b. The defendant's of this allegation are:

   A. Field Training Officer FNU

   Plumtin

   B. Sgt. Jane/John Doe CFTO

   Plumtin's Supervisor

C. Captain Gifford Hiscoe,

Chief of Security

D. Dave Dionne, Superintendent

E. Lt. FNU Reilly

etc. On the evening of November 30, 2014

at about 9:30p.m.

32    The plaintiff could be wrong as
far as the time of day, he is going to rely on
discovery to get the exact time as strip
searches are part of the daily activity log.

numerous staff were conducting strip searches[33]

33    Unit 2B houses RHU and maximum
security inmates the plaintiff was housed in cell
5 awaiting Hearing therefore was susceptable to

on demand strip searches at least once per day-
sometimes once per shift

c-1.        When it was time for the plaintiff

to strip, he was told to face the wall next to his

cell door (inside the cell) and put his arms behind

his back interlocking his fingers, so he

could get handcuffed. So he could be escorted

out of cell and his cell could be searched. The

plaintiff complied with all orders.

c-2     Lt, Riley, Sgt Brown and Correctional

Officer FNU Plumtin (now Field Training

Officer) were conducting the searches. The plaintiff believes one or two more "white shirts" were there as well. but does not remember who else. The plaintiff believes the cameras should reveal who was there on that evening during the strip search.

c-3   Defendant Correctional Officer Plumtin (now Field Training Officer) handcuffed the plaintiff and placed him facing the wall to the left of his cell door on the pad and searched his cell.

4    While the plaintiff ~~and his cell was being~~ being

Scratched, defendant Lt, FNU Riley asked the

plaintiff, "I hear you're leaving us tomorrow."

The plaintiff said, "Yes, I am, I can't

wait." Then defendant, FNU Riley said, "So

are you going to touch Kids or download Kiddie

porn again?" The plaintiff said (to be a wise

ass) "You ~~better~~ FXXKXXX believe it" ~~De~~

Defendant Lt, FNU Riley then called the

plaintiff a "Freak" and told him to get in his cell

and face the back wall.

43    The plaintiff was told to take off his

safety smock by a voice he recognized as

defendant Correctional Officer FULL Plesontia

(now Field Training Officer) [34]

[34]    The plaintiff was on suicide
Watch since about November-19, 2014,

and as he turned to face the defendant, he

Started talking saying, "so you're going to

molest kids, heh." Then as the plaintiff
                              defendant
faced Correctional Officer (now Field Training

Officer), he punched him so hard in the right eye

the plaintiff lost his footing. The plaintiff again

decided to be a wise ass and said "Is that all you got, that didn't even phase me." The plaintiff got what he deserved — another punch in the eye and the plaintiff fell to the ground and defendant Correctional Officer (Now Field Training Officer) said, "If I see you on the street I will cut your balls off [35]

35      While the assault occurred, defendant Lt. IHURitely, Sgt. IHU Brown, and an unknown officer were blocking the cell doors the cameras could not see what was going on.

C-6      The next day during med pass, a nurse

Laura Morrison (d10/a defendant) was conducting

Midpass and escorted either by Correctional

Officer Maloney or Correctional Officer Barbera

and She and he wanted to know how the

plaintiff got his black eye and abrasion on his

upper forehead. The plaintiff was afraid to

say anything because %'s protect each other. When

Laura promised the Officer was bound to keep

what he said confidential by HIPPA. So the

plaintiff told the truth.

C-7    At 9:30 A.M. on the 11th of

November 2010, Sgt. FNU Gordon and Sgt. FNU Brooks escorted the plaintiff to Booking to be processed out. On the way in a secure hallway where no trustees have no access, the plaintiff was pulled aside by Sgt. FNU Gordon (not a defendant) and asked out of concern, "Tell me what happened." The plaintiff again hesitated. Again, Sgt. FNU Gordon pleaded with the plaintiff, "I have a mortgage, I don't care about protecting the "c/o code". Now please tell me who did this."

The plaintiff said, "% Plumtin." "Thank you. Now that wasn't so hard. Don't worry, I will investigate this." Sgt. FNU Gordon said

do      The plaintiff could not apply for a part-time job for two weeks, until his eye and abraison on his forehead were healed. In fact, the plaintiff got referred for a position as a cashier at Hess on Massabesic St. in Manchester, but the plaintiff turned down the job because he was too embarrassed about what happened. The plaintiff realizes his

his own mouth got him into trouble and perhaps he may have proved defendant Correctional Officer Chew Field Training Officer FUUM smith in to him punching the plaintiff again, but he is a model and wears a badge; was on duty and abused that authority.

## DEMANDS

1. For: Allegation I NO TRACKING OF MAIL SENT AS INDIGENT, the pro se plaintiff Jonathan Andrew Perfetto, asks this Honorable Court for

Injunctive Relief by having the Court approve the enclosed form marked as Exhibit I with Hillsborough County Department of Corrections letterhead on it.

2. Also, the pro se plaintiff asks this Honorable Court for _Nominal Damages_ in the amount of $5 against each defendant and for each occurrance for HCDCC officials not having a way to keeptrack of their inmates' mail that they send as indigent, totaling $45 (three defendants and three seperate occasions.)

3.    Again, the pro se plaintiff asks this

Honorable Court for <u>Compensatory Damages</u> in

the amount of $1,000 against each defendant

and for each occasion for HCDOC officials

not having a way to track of their inmates'

mail that they send as indignant, totaling

$6,000.

4.    Finally, the pro se plaintiff asks this

Honorable Court for <u>Punitive Damages</u> in the

amount of $7,000 against each defendant and

for each occurrance for HCDOC officials not

having a way to Keep track of their inmates'
mail that they send as indigant, totaling
$12,000; for a grand total of $18,045 for this allegation.

5. For Allegation II NO TRACKING OF
LEGAL MAIL, the pro se plaintiff, Jonathan
Andrew Perfetto asks this Honorable Court
For ~~Final~~ Injunctive Relief by having the court
approve enclosed form marked as Exhibit II
with Hillsborough Department of Corrections
Letterhead on it.

6. Again, the pro se plaintiff asks this

Honorable Court for <u>Nominal Damages</u> in
the amount of $5 against each defendant and
for each occurance for HCDOC officials not
having a way to log both incoming and outgoing
legal mail, totaling $20 (three defendants and
one occurrance;)

7. Again, the pro se plaintiff asks this ~~the~~
Honorable Court for <u>Compensatory Damages</u>
in the amount of $1,000 against each defendant
and for each occurrance for HCDOC officials
not having a way to log both incoming and outgoing

legal mail; totaling $4,000

8.8      Finally, the pro se plaintiff, asks this

Honorable Court for <u>Penitive Damages</u> in the

amount of $2,000 against each defendant and

for each occurrance for HOOC officials not

having a way to log both incoming and outgoing

legal mail, totaling $12,020. For this

allegation.

9.      For Allegation <u>III</u> <u>FAILURE TO SEND</u>

<u>MAIL CERTIFIED</u>, the pro se plaintiff

Jonathan Andrew Perfetto, asks this Honorable

Court for _Injunctive Relief_ by the Court ordering the defendants to allow inmates to send mail certified, provided the inmate has sufficient funds in their account.

10.     Also the pro se plaintiff asks this Honorable Court for _Nominal Damages_ in the amount of $10 against each defendant and for each occurrance for NCDCC officials denying the plaintiff to mail a lawsuit certified to Hillsborough County Superior Court; eventhough he had sufficient funds in his

account, totaling $60 ( $5 five defendants
and one occurrance.)

11    Again, the pro se plaintiff asks
this Honorable Court for <u>Compensatory
Damages</u> in the amount of $1,000 against
each defendant and for each occurrance for
HCDoc officials denying the plaintiff to mail
                  certified
a lawsuit to Hillsborough County Superior
Court; eventhough he had sufficient funds in
his account, totaling $6,000

12.    Finally, the pro se plaintiff asks this

Honorable Court for <u>Punitive Damages</u> in the amount of $2,000 against each defendant and for each occasion for HCDCC officials denying the plaintiff to mail a lawsuit certified to Hillsborough County Superior Court, even though he had sufficient funds in his account, for a grand total of $18,060 for this allegation.

13. For Allegation II. <u>POOR REQUEST FORM FORMAT</u>, the pro se plaintiff Jonathan Andrew Perkertz, ask's this Honorable Court for the Injunctive Relief #2 to approve, enclosed form

Marked as Exhibit III with Hillsborough
County Department of Corrections letterhead on
it.

14. Also, the plaintiff asks this Honorable
Court for Nominal Damages in the amount
of $10 against each defendant and for each
occurrance for the DOC officials not having a way
to prove the plaintiff's Inmate Request forms
were written, forcing him to write repeated IRFs
for the same reason, totaling $240. (two
defendants and twelve occasions)

15.    Again, the pro se plaintiff asks 'his

Honorable Court for <u>Compensatory Damages</u> in

the amount of $1,500 against each defendant

and for each occurrance for HCDOC officials

not having a way, the plaintiff's IRF's were
                    to prove

written; forcing the plaintiff to write repeat

IRF's for the same reason, totaling $36,000.

16.    Finally, the pro se plaintiff asks this

Honorable Court for <u>Punitive Damages</u> in the

amount of $3,000 against each defendant and for

each occurance for HCDOC officials not having a

way to prove the plaintiff's IRFs were written, forcing him to write repeat IRFis for the same reason, totaling $12,000. The grand total is $108,240 for this allegation.

17. For Allegation V POOR MEDICAL REQUEST FORM FORMAT, the pro se plaintiff, Jonathan Andrew Perfetti asks this Honorable Court for Injunctive Relief to have the enclosed form marked as Exhibit IV with Hillsborough County Department of Corrections letterhead on it.

18. Also, the pro se plaintiff asks this Honorable

Court for Nominal Damages in the amount of $16 against each defendant and for each occasion for HcDcc officials not replying to his Medical Request Forms in a timely manner, totaling $3CC (three defendants and twelve occurrances).

19. Again, the pro se plaintiff asks this Honorable Court for Compensatory Damages in the amount of $1,5Cc against each defendant and for each occurrance, for HcDcc officials not replying to his MRF's in a timely manner, totaling $54,000.

20. Finally, the pro se plaintiff asks this Honorable Court for _Punitive Damages_ in the amount of $3,000 against each defendant and for each occasion for HCDOC officials not replying to his MRF's in a timely manner, totaling $108,000; for a grand total of $162,360 for this allegation.

21. For Allegation VI _DENIAL OF FACILITY PRESCRIBING MEDICATIONS PRESCRIBED BY THE PLAINTIFF'S PHYSICIAN, DR. KIPROP_, the pro se plaintiff ~~asks this~~ Jonathan ~~Honorable for~~ Andrew Pesfetto, ask this Honorable Court for

Injunctive Relief by having the Court order HCDOC officials to come up with a policy that ensures incoming inmates to get all prescribed medication by their PCP or psychiatrist.

22. Also, the prose plaintiff asks this Honorable Court for Nominal Damages in the amount of $10 against each defendant and for each occurrance for the following reasons:

a) Upon arrival at HCDOC on November 16, 2009, defendant Dr. Matthew Masewic did not prescribe the plaintiff's Pristiq, Risperadol, and

DepoProvera shots.

a-1) Defendant Denise Ryan is also liable for this allegation for not contacting the plaintiff's pharmacy to confirm his current medications as well as defendants Bill Fuller and Dave Dionne for having such a policy

b) On January 11, 2010, defendant Dr. Matthew Masewic refferred the plaintiff's treatment to defendant Dr. Quentin Turnball; forcing him to wait longer to get psychologically stabilized on psychiatric medication. He did

'his because he handed him his copy of a complaint the plaintiff sent to the NH Board of medicine.

&c) On January 4, 2011, defendant Dr. Matthew Masewic forced the plaintiff to detox off of his, Risperadol, Elavil and the plaintiff's DepoProvera shots upon his arrival at HCDC.

c) Also, defendant Denise Ryan is liable for this allegation for her not contacting the plaintiff's pharmacy to confirm his current medications as well as defendants Bill Fuller and

Dave Dionne for having such a policy.

d) Not all general health medications

were prescribed by defendant Dr. Matthew

Masewic until seen by him in February 2011,

d-1) Also, defendant Denise Ryan is liable

for this allegation for not contacting the ~~plaintiff~~

plaintiff's pharmacy to confirm his current

medications as well as defendant Bill Fuller and

Dave Dionne for having such a policy,

e) Defendant Dr. Quentin Turnball

neglected to prescribe anything when the

plaintiff filled out an MRF some time in

April, 2010 (or May) stating he could not sleep resulting in

twenty-three days of little sleep.

e-1) Also, defendant Denise Ryan

is liable for this allegation for not notifying Dr.

Turnball of the plaintiff's problem or failing to

schedule a sooner appointment as well as defendants

Bill Fuller and Dave Dionne under the supervisor

liability clause.

&F) About May 12, 2010, defendant

Dr. Quentin Turnball discontinued the plaintiff's

Remeron, but gave nothing to him for his depression and insomnia issues.

g) During the plaintiff's 2009-10 incarceration, defendant Dr. Quentin Turnball prescribed three different medications (Remeron, Trilifon, and Lemectil) that did not work.

h) When the plaintiff saw defendant Dr. Quentin Turnball in February 2011 for his intake, he only prescribed two (Tegretol and Buspar) of the four medications the plaintiff was on upon admission to HCDOC, totaling $~~340 350~~ $600

23.   Again, the pro se plaintiff asks this Honorable

Court for Compensatory Damages in the amount of

$2000 against each defendant and for each

occurrance due to the following reasons:

a) Upon arrival at HCDOC on November

16, 2009, defendant Dr. Matthew Masewic did

not prescribe the plaintiff's Risperadel,

Pristiq and his Depo Provera shots.

a-1) Defendant Denise Ryan is also

liable for this allegation for not contacting the

plaintiff's pharmacy to confirm his medications,

as well as defendants Bill Fuller and Dave Dionne for having such a policy.

b) On January 11, 2010, defendant Dr. Matthew Masewic reoffered the plaintiff's treatment to defendant Dr. Quentin Turnbull, forcing him to wait longer to get stabilized on psychiatric medication. He did this because the plaintiff handed him his copy of a complaint he sent to the NH Board of Medicine.

c) On January 4, 2011, defendant

Dr. Matthew Mosewic forced the plaintiff to detox off of his Risperadol, Elavil and the Plaintiffs Depo Provera Shots upon his arrival at HCDCC.

c-1) Defendant Denise Ryan is also liable for this allegation for not contacting the plaintiffs pharmacy to confirm his current medications as well as Bill Fuller and Dave Dionne for having such a policy.

d) Not all the plaintiff's general

health medications were prescribed by
defendant Dr. Matthew Masewic until the
plaintiff was seen by him in February 2011.

d-1) Also, defendant Defendant Denise
Ryan is liable for this allegation for her not
contacting the plaintiff's pharmacy to confirm
the plaintiff's medications as well as defendants Bill
Fuller and Dave Dionne for having such a
policy.

e) Defendant Dr. Quentin Turnball
neglected to prescribe anything when the

plaintiff filled out an MRF some time in April or May 2010 stating he could not sleep, resulting in twenty-three days of little sleep.

e-1) Also, defendant Denise Ryan is liable for this allegation for not notifying Dr. Turnball of the plaintiff's problem or failing to schedule a sooner appointment, as well as defendants Bill Fuller and Dave Dionne under the supervisor liability clause.

F) About May 12, 2010, defendant

Dr. Quentin Turnball discontined the plaintiffs Remeron, but gave nothing to him for his depression, and bi-polar issues.

g) During the plaintiffs 2009-10 incarceration, defendant Dr. Quentin Turnball prescribed three different medications ~~that did~~ (Remeron, Trilifon, and Lenectil) that did not work.

h) When the plaintiff saw defendant Dr. Quentin Turnball in Feb 2011 for his intake, he only prescribed two (Tegretol and Buspar) of

The four medications the plaintiff was on upon arrival to HCDCC, totaling $120,000

24. Finally, the prose plaintiff asks this Honorable Court for Punitive Damages in the amount of $4,000 against each defendant and for each occurance for the following reasons:

a) Upon arrival to HCDC on November 16, 2009, defendant Dr. Matthew Masewic did not prescribe the plaintiffs Risperedal, Pristiq and his Depo Provera shots.

a-1) Also, defendant is liable for this

- 131 -

allegation for not contacting the plaintiffis

pharmacy to confirm his current medications as

wellas defendant's Bill Fuller and Dave

Dionne for having such a policy

   b) On January 11, 2010, defendant

Dr. Mathew Masewic referred the plaintiff's

treatment to Dr. Turnball; forcing the plaintiff

to wait longer to get stabilized on psychiatric

medication. He did this because the plaintiff

handed him his copy of a complaint he sent to

the NH Board of medicine.

c) On January 4, 2011, defendant Dr. Matthew Masewic forced the plaintiff to detox off of his Risperadel, Elavil, and the plaintiff's DepoProvera shots upon his arrival to HCDOC.

c-1) Also, defendant Denise Ryan is liable for this allegation for not contacting the plaintiff's pharmacy to confirm his medications; as well as defendants Bill Fuller and Dave Dionne for having such a policy.

d) Not all of the plaintiff's general

health medications were prescribed by
defendant Dr. Matthew Masewic until the
plaintiff saw him in February 2011.

    d-1) Also, defendant Denise Ryan
is liable for this allegation for not contacting
the plaintiff's pharmacy to confirm his
medications, as well as defendant's Bill Fuller
and Dave Dionne, for having such a policy

    e) Defendant Dr. Quentin Turnball
neglected to prescribe anything when the
plaintiff filled out an MRF sometime in April

or May 2010 stating he could not sleep,

resulting in twenty-three days of little sleep,

e-1), Also, defendant Denise Ryan is

liable under this allegation for not notifying

Dr. Quentin Turnball ~~in February 2011 for his~~ of the plaintiffs problem

or for failing to schedule a sooner appointment

as well as Bill Fuller and Dave Dionne under

the supervisor liability clause.

F) About May 12, 2010, defendant Dr.

Quentin Turnball discontinued the plaintiffs

Remeron, but gave nothing for his depression

and bi-polar issues.

g) During the plaintiff's 2009-10 incarceration, defendant Dr. Quentin Turnball prescribed three different medications (Remeron, Trilifon, and Lemedil) that did not work.

h) When the plaintiff saw defendant Dr. Quentin Turnball in February 2011 for his intake, he only prescribed two (Tegretal and Buspar) of the four medications the plaintiff was on upon admission to HCDCC, totaling $240,000 for a grand total of $360,000

for this allegation.

25. For Allegation VII DENIAL OF INCOMING RELIGIOUS MATERIAL, the pro se plaintiff, Jonathan Andrew Perfetty asks this Honorable Court for Injunctive Relief by having the Court order HCDC officials to accept incoming mail by UPS or Federal Express.

26. Also, the plaintiff asks this Honorable Court for Nominal Damages in the amount of $/i against each defendant and for

-137-

each occurrance for HCDOC officials denying
the plaintiff's incoming religious material on three
seperate occasions, totaling $120 ( four
defendants and three occasions).

27.     Again, the pro se plaintiff asks this
Court for <u>Compensatory Damages</u> in the amount
of $2,500 against each defendant and for
each occurrance for HCDOC officials denying
the plaintiff's incoming religious material,
on three seperate occasions, totaling $30,000.
28.     Finally, the pro se plaintiff asks this

Honorable Court for <u>Punitive Damages</u> in the amount of $5,000 against each defendant and for each occasion for HCDC officials not deying the plaintiff's incoming religious material on three seperate occasions, totaling $60,000; for a grand total of $90,120 for this allegation.

29.    For Allegation <u>VIII</u> MEDICAL ~~DI~~ DEPARTMENT LETTING THE PLAINTIFFS MEDICATION RUN OUT, the prese. plaintiff, Jonathan Andrew Perfetto, asks

this Honorable Court for Injunctive Relief
by ordering HcDoc officals to come up with a
policy to ensure inmates medications are
reordered in a timely manner to ensure
their medications do not run out.

3)      Also, the prose plaintiff asks this
Honorable Court for Nominal Damages in the
amount of $10 against each plaintiff and
for each occurrance for HcDoc officials .
allowing the plaintiff's medication to run out or
expire on several occasions, totaling $150 (three

defendants and five occasions),

31. Again, the pro se plaintiff asks this Honorable Court for Compensatory Damages in the amount of $3,000 against each defendant and for each occurrance for HCDOC officials allowing the plaintiff's medication to run out or expire on several occasions, totaling $45,000.

32. Finally, the pro se plaintiff asks this Honorable Court For Punitive Damages in the amount of $6,000 against each defendant plaintiff and for each occurrance for HCDOC

officials to allow the plaintiff's ~~M~~ medications to run out or expire on several occasions totaling $90,000 for this allegation, for a grand total of $135,150 for this allegation.

33. For Allegation IX Safety Violations, the prose plaintiff, Jonathan Andrew Perfetto, asks this Honorable Court for Injunctive Relief by ordering defendants Captain Gifford Hiscoe and Dave Dionne to retrain Corrections Officers work unit 24, to prevent

further breaches of security.

34. Also, the prose plaintiff asks this Honorable Court for <u>Nominal Damages</u> in the amount of $10 against each defendant and for each occurrence for the following reasons:

a) During the plaintiff's 2009-10 incarceration, the defendants % FNU Crowell, c/o Goodyerez (younger one), % FNU FNU Price, and % FNU Sappyenzza made one security breach by letting the plaintiff,

a protective custody inmate, intermingle
with general population inmates

b) In September 2010 defendants
% FNU Crowell and % FNU Goulding failed
to protect the plaintiff from his cellmate
Paul Dimmick.

c) On April 4 on 5, 2010, defendant
Lieutenant FNU Boyer forced the
plaintiff to fill out an IRF to withdraw
his request for a grievance for being
housed with a physically and sexually

aggressive inmate.

d) During the plaintiffs 2009-10 and 2011 incarcerations defendants Bill Fuller, Captain Gifford / Hiscoe and Dave Dionne failed to do anything about the four security breaches and/or the physical and sexual assaults by former inmates Paul Dimmick and Walter Alexis, totaling $400

35. Again Also the pro se plaintiff asks this Honorable Court for Compensatory Damages in the amount of $3500 against each

defendant, for the following reasons: and for each occurrance

a) During the plaintiff's 2009-10 incarceration defendants, FNU Crowell, c/o FNU Goodyerez (younger one) c/o FNU Price, and c/o FNU Sappyenzza made one security breach by letting the plaintiff, a protective custody inmate, intermingle with general population inmates.

b) In September 2010, defendants c/o FNU Crowell and c/o FNU Goulding failed to protect the plaintiff from

his cellmate Paul Dimmick.

c) On April 4 or 5, 2010, defendant
FNu Beyer forced the plaintiff to fill out
an IRF to withdraw his request for
a grievance for being housed with a
physically, agressive inmate.
and sexually

d) During the plaintiffs 2009-10 and
2011 incarcerations, defendants Bill Fuller,
Captain Gifford
~~Dave Dionne~~, Hiscoe, and Dave Dionne failed
to do anything about the four security breaches
and/or the physical and sexual assaults by

- 147-

Former inmates Paul Dimmick and Walter

Alexis, totaling $140,000

3. Finally, the pro se plaintiff asks this

Honorable Court for <u>Punitive Damages</u> in the

amount of $7,000 against each defendant ~~occurrance~~

and for each occurrance for the following

reasons:

a) During the plaintiff is 2009-10

incarceration, defendants % FNU Crowell, % FNU

Goodyerez (younger one), % FNU Price, and % FNU

Sappyenriza made one security breach by

letting the plaintiff intermingle with general population inmates.

b) In September 2010, defendants c/o FNU Crowell and c/o FNU Goulding failed to protect the plaintiff from his cellmate Paul Dimmick.

c) On April 4 or 5, 2010, defendant Lieutennant FNU Boyer forced the plaintiff to fill out an IRF to withdraw his request for a grievance for being housed with a physically and sexually agressive inmate.

d) During the plaintiff's 2009-10 and 2011 incarcerations, defendants Bill Fuller, Captain Gifford Hiscoe, and Dave Dionne failed to do anything about the four security breaches and/or the plysical and sexual assaults by former inmates Paul Dimmick and Walter Alexis, totaling $280,000 for a grand total of $420,400, for this allegation.

37. For Allegation X IMPROPER MAIL PRCCEDURES, the pro se plaintiff Jonathan Andrew Perfetto, asks this

Honorable Court for <u>Injunctive Relief</u> by the Court ordering HCDOC officials to change their mail policy to allow incoming mail from UPS and Federal Express.

38. Also, the pro se plaintiff asks this Honorable Court for <u>Nominal Damages</u> in the amount of $10 against each defendant and for each occurrance for HCDOC official having an improper mail policy compaired to other correctional facilities in the area, to taling $50 (two defendants three occurrances)

39. Again, the pro se plaintiff asks this Honor Honorable Court for <u>Compensatory Damages</u> in the amount of $4,000 against each defendant and for each occurrence for HCDC officials having an improper mail policy compared to other correctional facilities in the area, totaling $20,000.

40. Finally, the pro se plaintiff asks this Honorable Court for <u>Punitive Damages</u> in the amount of $8,000 against each defendant and for each occurrance for HCDC officials having

an improper mail policy compared to other

correctional facilities in the area, totaling $40,000;

for a grand total of $60,000, for this allegation.

(1). For Allegation XI Loss of Freedom,

the pro se plaintiff, Jonathan Andrew

Perfetto, asks this Honorable Court for

Nominal Damages in the amount of $10

against each ~~plaintiff~~ defendant and for each

~~certificate~~ reason for not having prescribed the
HDOC officials

plaintiff's Depo Provera Cor not ordering

medical to do so.), a female hormone given

to ~~gi~~ sex offenders to curb their urges to molest children and to frequently ~~mester~~ masturbate during his November 2009 to November 2010 incarceration; causing the plaintiff to have urges to molest a child before being released, and when he was released, committed five Felonies

the plaintiff

(possessing child sex abuse images aka child pornography) since the plaintiff did not have a strong enough level of Depo Provera in his system; ~~and~~ therefore losing

his freedom for a minimum of twenty years,

totaling $80 (Four defendants and two reasons)

42.      Also, the pro se plaintiff asks this

Honorable Court for <u>Compensatory Damages</u>

in the amount of $7,800,000 [36]

[36]      The plaintiff arrived at this
figure by calculating $1,000 a day for twenty
years (including five leap years)

against each defendant and for each reason

for HCDOC officials not having the plaintiff's
                    prescribed
Dept. Provera, (or not ordering medical to dose)

a female Hormone given to sex offenders to

curb their urges to molest children and to frequently masturbate during his November 2009 to November 2010, causing the plaintiff to have urges to molest a child before being released, and when he was released, the plaintiff committed five felonies (possessing child sex abuse images aka child pornography) since the plaintiff did not have a strong enough level of Depo Provera in his system; therefore losing his freedom for a minimum of twenty years, totaling ~~$50 four defendants~~

$62,400,000.

43.    Again, the pro se plaintiff asks this

Honorable Court for Special Compensatory

Damages in the amount of $500,000 ~~39~~

~~39~~    The reason why the plaintiff asked
for special compensatory damages is due to the
fact it is hard to tell if the plan would be kicked
off SSI by finding full-time work with the
help of Vocational Rehabilitation. The plaintiff
has used their services in the past with success
in getting thrown off Social Security benefits in
2006 ( he made too much money at his job to still
continue his monthly benefit.) This was the
plaintiff's last job. He was a floating cashier
for Gibbs Gas station (now Hess), which
ment he was not assigned to any one location.
The plaintiff went were he was needed.

in the amount of $500,000 for HCDC officials
not having the plaintiff's Depo Provera (or not prescribed
ordering medical labs) , a female hormone
given to sex offenders to curb their urges and
to frequently masturbate during his November
2009 to November 2010, causing the plaintiff
to have urges to molest a child before
being released, and when he was released he
committed five felonies (possessing child sex
abuse images aka child pornography) since the
plaintiff did not have enough Depo Provera in

-158-

his system; therefore losing his freedom for a minimum of twenty years, totaling $4,000,000.

44. Finally, the pro se plaintiff asks this Honorable Court for <u>Punitive Damages</u> in the amount of $11,700,000 (for the Compensatory damages) and $6,000,000 (for the Special Compensatory Damages) against each defendant and for each reason for HCDCC officials not having the plaintiff's Depo Provera prescribed (or ordering medical to do so), a female hormone given to

sex offenders to curb their urges and to frequently masturbate during his November 2009 to November 2010; causing the plaintiff to have urges to molest a child before being ~~once released~~ released, he committed five felonies (possessing child sex abuse images a.k.a child pornography) since the plaintiff did not have enough Depi Provera in his system; there losing his freedom for a minimum of twenty years totaling $/6, 400,000; for a grand total of $168,800,000 for this allegation.

45. For Allegation XII Destroying Legal

Discovery, the pro se plaintiff, Jonathan Andrew Perfetto, asks this Honorable Court for Nominal Damages in the amount of $10 against each defendant and for each occurrance for defendant's destroying the plaintiff's lawsuit he wished to file in Hillsborough County Superior Court, North and for having to use the United States Postal Service to mail his lawsuit to the defendant's.

46.    Also, the pro se plaintiff asks this Honorable Court for Compensatory Damages

in the amount of 186.32 against each
defendant, for defendant's destroying the
and for each reason
plaintiff's lawsuit that he wanted to file in
Hillsborough County Superior Court, North and
for having to use the United States Postal Service
to mail his lawsuit to the defendant's, totaling
$1,117.92.

47.   Finally, the pro se plaintiff asks this
Honorable Court for Punitive Damages in the
amount of 999,999.99 against each defendant
and for each reason for defendant's destroying

−162−

the plaintiff's lawsuit for that he wanted
to file in Hillsborough County Superior Court,
North and for having to use the United States
Postal Service to mail his lawsuit to the
defendant's, totaling $~~6,001,118.96~~ $5,999,999.94; for a grand
total of $6,001,118.96

48.   For Allegation XIII Medical Administrator
Not Doing Her ~~Job Correctly~~, the pro se
plaintiff, Jonathan Andrew Perfetto, asks this
Honorable Court For Injunctive Relief by
having this court order defendants Bill Fuller

and Dave Dionne to develop a plan to

make sure appointments are made to see

Dr. FNU Turnball when he request to see

the patient in their chart as well as

developing a plan to prevent a patients

prescription for psychiatric medication from

running out.

#. The pro se plaintiff asks this

Honorable Court for _Nominal Damages_ in the

amount of $10 against each defendant and

for each reason for defendants failure to

schedule the plaintiff to see defendant Dr.

Quentin Turnball see at least ten occasions,[38]

[38]      The plaintiff reserves the right to
amend the this amount of occasions once discovery is
completed

for allowing the plaintiff's his medication's to expire

on at least two occasions[39]

[39]          see footnote 38

and for allowing the plaintiff's medication to

run out on at least ten occasions[40]

[40]          see footnote 38

during the his 2009 incarceration, totaling $420

50,     Again, the pro se plaintiff asks this

Honorable Court for <u>Compensatory Damages</u> in

the amount of $4,500 against each defendant

and for each reason for failure to schedule <del>the</del>
                                    defendants'

him to see defendant Dr. Quentin Turnball on

at least two occasions, for allowing the

plaintiff's medication to expire and for

allowing the plaintiff's medication run

out on at least ten occasions during his

2009 incarceration, totaling $67,500

51.     Finally, the pro se plaintiff asks this

Honorable Court for _Punitive Damages_ in the amount of $9000 against each defendant and for each reason for defendants not scheduling the plaintiff to see defendant Dr Quentin Turnball on at least two occasions, for allowing the plaintiff's medication to expire on at least two occasions. and for allowing his medications to expire on at least ten occasions, totaling $135,000 for a grand total of $202,42 for this allegation.

52.     For Allegation XIV BOOKING OFFICER

## RELEASING A SUICIDAL INMATE,

the prose plaintiff, Jonathan Andrew Perfetti, asks this Honorable Court for <u>Injunctive Relief</u> by ordering defendants to develop a plan on how to deal with inmates that max out on suicide watch and be approved by this court.

53. Also, the pro se plaintiff asks this Honorable Court for <u>Nominal Damages</u> in the amount of $10 against each defendant and for each reason for defendant's releasing him who was on special watch without a referral to receive mental health

Services on the outside on November 14, 2010

and for not having Mental Health are the plaintiff

before he maxed out, totaling $140.

54.    Again, the pro se plaintiff asks this

Honorable Court for Compensatory Damages

in the amount of $5,000 against each

defendant and for each reason for defendants

releasing him, who was on special watch without

a referral to receive mental health services or

the outside on November 14, 2010 and for not

having mental health see the plaintiff before

he maxedout, totaling $70,000.

55. Finally, the prose plaintiff asks this Honorable Court for <u>Punitive Damages</u> in the amount of $10,000 against each defendant and for each reasons for defendants releasing him while on suicide watch on November 1st, 2012 and for mental health not seeing the plaintiff before he maxed out, totaling $110,070 for a grand total of $210,140 for this allegation.

56. For Allegation <u>XV</u> <u>ASSAULT BY A STAFF MEMBER</u>, the prose plaintiff

Jonathan Andrew Perfetto, asks this Honorable

Court for <u>Nominal Damages</u> in the amount of $10

against each defendant and for each reason for ^defendant

% FNU Plumtin ~~FBI~~ harassing, physically ^the plaintiff

assaulting them twice and for threatening the

plaintiff which all occured on November 13, 2010, "

‾ui

       All other defendants are held

liable by the Supervisor Liability Doctrine

~~liable~~

totaling $200.

51.    Also, the pro se plaintiff asks this Honorable

Court for <u>Compensatory Damages</u> in the amount

_ of $500,000 [12]

42

The plaintiff asks for __Compensatory Damages__ in the six figures is due to the fact that defendant % FNU Plumtin used his authority as a % when he committed his offenses against the plaintiff.

against each defendant and for each reason for defendant % FNU Plumtin (now Field Training Officer) harrassing the plaintiff, physically assaulting him, twice and threatening the plaintiff which all occurred on November 13, 2010, totaling $10,000,000.

57.   Finally, the pro se plaintiff asks this Honorable Court for __Punitive Damages__ in the amount of $1,000,000 against each defendant and for each

reason for defendant % FNU Plumtin (new Field Training Officer) harassing the plaintiff, physically assaulting him twice, and for threatering the plaintiff. which all occurred on November 13, 2010, totaling $20,000,000. The grand total is $30,000,200 for this allegation.

## Amendment To Demands

1.   The pro se plaintiff, Jonathan Andrew Perfetto, wishes to strike the _Injunctive Relief Sought_ for Allegation _VII_ _DENIAL OF INCUMING RELIGIOUS MATERIAL_

to:

a) For Allegation VII DENIAL OF INCOMING RELIGIOUS MATERIAL, the pro se plaintiff, Jonathan Andrew Perfetto, asks this Honorable Court for Injunctive Relief by having the Court order HcDOC officials come up with a policy that allows inmates to share religious material with other interested inmates but balance security interests.

Amendment

1.  The pro se plaintiff, Jonathan A. Perfetto

Wishes to amend this complaint as follows:

2.    Sometime in March or April 2011,
defendants Capt. Gifford Hiscoe and Bill
Fuller spoke to the plaintiff rather extensively
to investigate his allegations of being sexually
assaulted by Walter Alexis. They met in the
attorney room of unit 213 and spoke for about
an hour.

3.    The plaintiff wishes to add above
paragraph to Allegation IX SAFETY
VIOLATIONS after para. C-23.

In closing, the pro se plantiff,
Jonathan Andrew Perfetto, sues all defendants
both in their official and individual capacities.
The final total of this civil complaint is
$207,487,422.86.

Respectfully Submitted,

Jonathan A. Perfetto

I, Jonathan Andrew Perfetto, declare

under penalty of perjury that the
foregoing is true and correct to the best of
my knowledge.

December 8, 2014                    Jonathan A. Pertetto
December 8, 2014                    Jonathan A. Pertetto

U.S. DISTRICT COURT
DISTRICT OF N.H.
FILED

2014 DEC 15 P 12: 11

Jonathan A. Perfetto
73040
Northern NH Correctional Facility
138 E. Milan Rd.
Berlin, NH 03570-3565

Decerember 8, 2014 / Kislev 16, 5775 (Jewish Calandar)
Mailed 12/9/14 / 3/16/75

James R. Starr
Clerk of Court
US District Court
55 Pleasant St.
Concord, NH 03301-3941

RE: Enclosed Complaint

Dear Clerk:

I appologize the enclosed complaint does not conform to Legal Rules. This is sold in my canteen.

Respectfully,

Jonathan A. Perfetto

JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Jonathan A. Perfetto

U.S. DISTRICT COURT
DISTRICT OF N.H
FILED

2014 DEC 15 PM

**(b)** County of Residence of First Listed Plaintiff  Coos
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

## DEFENDANTS
Dave Dionne, Superintendent, Hills, County Dept. of Corr.

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government Plaintiff
- ☐ 2  U.S. Government Defendant
- ☐ 3  Federal Question *(U.S. Government Not a Party)*
- ☒ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☒ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| | ☐ 350 Motor Vehicle | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 190 Other Contract | ☐ 362 Personal Injury - Medical Malpractice | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 195 Contract Product Liability | | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 196 Franchise | | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| | | ☐ 791 Employee Retirement Income Security Act | | ☐ 895 Freedom of Information Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | |
| | ☐ 448 Education | ☒ 550 Civil Rights | ☐ 465 Other Immigration Actions | |
| | | ☐ 555 Prison Condition | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☐ 1  Original Proceeding
- ☐ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☒ 4  Reinstated or Reopened
- ☐ 5  Transferred from Another District *(specify)*
- ☐ 6  Multidistrict Litigation

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 USC Section 1983
Brief description of cause:
Medical Mistreatment and Religious

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
DEMAND $ 207,487,422.86
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions:)*
JUDGE _____   DOCKET NUMBER _____

DATE 12/8/2014

SIGNATURE OF ATTORNEY OF RECORD
Jonathan A. Perfetto, Pro Se

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____